# Supreme Court of Florida

———————

No. SC21-1407

———————

**FRED SOMERS,**
Appellant,

vs.

**UNITED STATES OF AMERICA,**
Appellee.

November 17, 2022

CANADY, J.

This Court has for review two questions of Florida law certified by the United States Court of Appeals for the Eleventh Circuit in *Somers v. United States*, 15 F.4th 1049, 1056 (11th Cir. 2021), regarding an element of Florida's assault statute, section 784.011(1), Florida Statutes. We have jurisdiction. *See* art. V, § 3(b)(6), Fla. Const.

## I. BACKGROUND AND CERTIFIED QUESTIONS

In 2013, Fred Somers pleaded guilty to a federal indictment charging possession of a firearm by a convicted felon in violation of

18 U.S.C. § 922(g)(1). Based on his four prior "violent felony" convictions, the district court determined that Somers should be sentenced to enhanced penalties under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), and imposed a sentence of 211 months' imprisonment.[1] Critical to the district court's imposition of the ACCA-enhanced sentence was its conclusion that Somers's 1998 Florida conviction for aggravated assault with a deadly weapon under section 784.021(1)(a), Florida Statutes (1997), qualifies as a "violent felony" under the ACCA.

Somers appealed his federal conviction and sentence for possession of a firearm by a convicted felon, and the Eleventh Circuit affirmed. *United States v. Somers*, 591 F. App'x 753 (11th Cir. 2014). In 2016, Somers filed a collateral challenge to his enhanced sentence under 28 U.S.C. § 2255. He argued, inter alia, that his Florida aggravated assault conviction was not a "violent

---

1. Under the ACCA, a defendant who unlawfully possesses a firearm and has three prior convictions for either "serious drug offenses" or "violent felonies" is subject to enhanced penalties. Specifically, a ten-year maximum sentence becomes a fifteen-year mandatory minimum sentence with a statutory maximum term of life. 18 U.S.C. § 924(e)(1).

felony" under the ACCA because it lacked the requisite mens rea. At the time, Eleventh Circuit precedent foreclosed Somers's argument, which resulted in the district court denying his motion. Nonetheless, the district court granted a certificate of appealability, concluding that "reasonable jurists could disagree on whether aggravated assault under Florida law is a violent felony under the element[s] clause" of the ACCA. *United States v. Somers*, 4:12CR6-RH-MJF, 2019 WL 1236055, at *3 (N.D. Fla. Mar. 18, 2019), *aff'd*, 799 Fed. Appx. 691 (11th Cir. 2020), *vacated and superseded on reh'g*, 15 F.4th 1049. To qualify as a violent felony under the elements clause of the ACCA, the predicate conviction must have "as an element, the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B).

On appeal to the Eleventh Circuit, Somers maintained that the Florida offense of aggravated assault is not a "violent felony" under the ACCA because it can be committed recklessly and therefore does not satisfy the elements clause. The Eleventh Circuit initially affirmed the district court's denial of the § 2255 motion based on its prior precedent in *Turner v. Warden Coleman FCI*, 709 F.3d 1328,

- 3 -

1337-38 (11th Cir. 2013), *abrogated on other grounds by Johnson v. United States*, 576 U.S. 591 (2015), concluding that a Florida aggravated assault was a "violent felony" because "by its definitional terms," its first element—a simple assault—included an intentional and unlawful threat "to do violence" to the person of another. *Somers v. United States*, 799 F. App'x 691, 692 (11th Cir. 2020).

Somers filed a petition for rehearing in which he asked the Eleventh Circuit to revisit its precedent. In June 2021, while the petition for rehearing was still pending, the United States Supreme Court issued its opinion in *Borden v. United States*, 141 S. Ct. 1817, 1821-22, 1834 (2021) (plurality), holding that a crime that requires only a mens rea of recklessness cannot qualify as a "violent felony" as defined by the ACCA's elements clause.

After supplemental briefing by the parties regarding whether a Florida aggravated assault conviction still qualifies as an ACCA predicate conviction in light of *Borden*, the Eleventh Circuit granted Somers's petition for rehearing and certified the following two questions of Florida law to this Court:

> 1. Does the first element of assault as defined in Fla. Stat. § 784.011(1) -- "an intentional, unlawful threat by

word or act to do violence to the person of another" --
require specific intent?

2. If not, what is the *mens rea* required to prove that
element of the statute?

*Somers*, 15 F.4th at 1056.[2]

Before we can answer the certified questions, we must clarify

what is being asked. For the most part, the parties interpret the

first certified question as simply asking, "Is assault a specific intent

crime in Florida?" "Specific intent is most commonly understood as

'designat[ing] a special mental element which is required above and

beyond any mental state required with respect to the *actus reus* of

---

2. The reason the Eleventh Circuit is asking about simple assault rather than aggravated assault—which is the predicate felony at issue—is because

> [t]o decide whether an offense satisfies the elements clause, courts use the categorical approach. . . . The focus is . . . on whether the elements of the statute of conviction meet the federal standard. Here, that means asking whether a state offense necessarily involves the defendant's "use, attempted use, or threatened use of physical force against the person of another." If any— even the least culpable—of the acts criminalized do not entail that kind of force, the statute of conviction does not categorically match the federal standard, and so cannot serve as an ACCA predicate.

*Borden,* 141 S. Ct. at 1822 (citations omitted).

- 5 -

the crime.'" *Somers*, 15 F.4th at 1053 (quoting 1 Wayne R. LaFave, *Substantive Criminal Law* § 5.2(e) (3d ed. 2017)). But the Government correctly recognizes that whether Florida assault is a specific- or general-intent crime "is largely beside the point." Amended Response Br. of Appellee at 17. Indeed, if the Eleventh Circuit were simply asking whether assault in Florida is a specific intent crime, as that phrase is most commonly understood, the answer would do nothing to help the Eleventh Circuit determine whether Somers's Florida aggravated assault conviction qualifies as a "violent felony" under the ACCA's elements clause. Further, the most common understanding of "specific intent" is not the only way in which the phrase is understood or used. "Specific intent" may be used "to denote an intent to do [a specific act] at a particular time and place," LaFave, *supra*, § 5.2(e); that is, "intentionally engag[ing] in specific conduct," *id.* at § 5.2(a). As the Eleventh Circuit recognizes, "specific intent" can also mean "[t]he intent to accomplish the precise criminal act that one is later charged with." *United States v. Ortiz*, 318 F.3d 1030, 1036 n.10 (11th Cir. 2003) (quoting *Black's Law Dictionary* 814 (Deluxe 7th ed. 1999)). To discern what the Eleventh Circuit is actually asking in the first

certified question, we look to the United States Supreme Court's opinion in *Borden*, 141 S. Ct. 1817—which was the catalyst for the certified questions—and then to what the Eleventh Circuit said in *Somers*.

In *Borden*, the Supreme Court held that the phrase "use . . . against the person of another" in the ACCA's elements clause "sets out a *mens rea* requirement—of purposeful or knowing conduct." 141 S. Ct. at 1828, 1829 n.6.  It also stated that the elements clause "demands that the perpetrator direct his action at, or target, another individual." *Id.* at 1825.  A crime that can be committed with a mens rea of mere recklessness therefore cannot qualify as a crime of violence under the elements clause because "[r]eckless conduct is not aimed in [the] prescribed manner." *Id.*; *see also id.* at 1833 (" '[A]gainst the person of another,' when modifying the 'use of physical force,' introduces that action's conscious object.  So it excludes conduct, like recklessness, that is not directed or targeted at another." (citation omitted)).  It should be noted that the term "specific intent" is not found in the *Borden* opinion.  That term did not become prominent in Somers's proceedings until Somers

included it in the supplemental briefing that was ordered by the

Eleventh Circuit in the wake of *Borden.*

In *Somers,* the Eleventh Circuit explained that

> the elements clause [of the ACCA] requires both the
> general intent to volitionally take the action of using,
> attempting to use, or threating to use force and
> something more: that the defendant direct the action at a
> target, namely another person. *Specific intent to direct
> action at another satisfies this latter requirement, as does
> "knowing conduct."* Borden, 141 S. Ct. at 1828 (holding
> that the elements clause's "against the person of another"
> phrase "sets out a *mens rea* requirement -- of purposeful
> or knowing conduct").
>    Thus, if Florida aggravated assault requires a *mens
> rea* of specific intent to use, attempt to use, or threaten
> to use physical force against the person of another, then
> Florida aggravated assault qualifies as an ACCA violent
> felony predicate and Somers's ACCA-enhanced sentence
> must stand.

*Somers,* 15 F.4th at 1053-54 (emphasis added) (footnote omitted).

Thus, it is clear that the Eleventh Circuit is not actually

concerned with whether Florida assault is a specific intent crime as

that phrase is most commonly understood; rather, the court is

asking whether the first element of section 784.011 requires specific

intent to direct the prohibited action (a threat to do violence) at

another. Asking whether the first element of a crime requires

specific intent to direct action is different than asking whether the

crime is a specific intent crime. We therefore rephrase the first certified question as:

> Does the first element of the assault statute, section 784.011(1), require not just the general intent to volitionally take the action of threatening to do violence but also that the actor direct the threat at a target, namely another person?

## II. ANALYSIS

Section 784.011(1), Florida Statutes, defines "assault" as "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent." The statute thus requires proof of three elements: (1) an intentional, unlawful threat by word or act to do violence to the person of another; (2) an apparent ability to carry out the threat; and (3) creation of a well-founded fear that the violence is imminent.

To answer the rephrased first certified question, we need not look further than the plain language of section 784.011(1), which confirms that assault does require what the *Somers* court refers to as "specific intent" to direct action at another. The act that section 784.011(1) prohibits (when the second and third elements also

exist, of course) is an intentional threat to do violence to another person. It is important to clearly understand what is meant by the words "threat" and "violence" in the statute.

"Where, as here, the [L]egislature has not defined the words used in a [statute], the language should be given its plain and ordinary meaning." *Debaun v. State*, 213 So. 3d 747, 751 (Fla. 2017) (alterations in original) (quoting *Sch. Bd. of Palm Beach Cnty. v. Survivors Charter Sch., Inc.*, 3 So. 3d 1220, 1233 (Fla. 2009)). "When considering the [plain] meaning of terms used in a statute, this Court looks first to the terms' ordinary definitions[, which] . . . may be derived from dictionaries." *Id.* (alterations in original) (quoting *Dudley v. State*, 139 So. 3d 273, 279 (Fla. 2014)). Because the Legislature did not define "threat" or "violence" in chapter 784, we will refer to dictionaries in order to ascertain the plain and ordinary meanings of the terms.

The 1972 edition of *Webster's Seventh New Collegiate Dictionary*, which was published not long before the 1974 enactment of section 784.011, defines "threat" as "an expression of intention to inflict evil, injury, or damage." *Webster's Seventh New Collegiate Dictionary* 920 (1972). Similarly, the *American Heritage*

*Dictionary New College Edition* of 1979 defines "threat" as "[a]n expression of an intention to inflict pain, injury, evil, or punishment on a person or thing." *American Heritage Dictionary New College Edition* 1340 (1979). The definition in the contemporaneous *Black's Law Dictionary* is consistent. It defines a "threat" as "[a] communicated intent to inflict physical or other harm on any person or on property." *Threat, Black's Law Dictionary* (5th ed. 1979). The use of the term "threat" in the assault statutes thus targets a specific type of conduct: an "expression" of an intent or a "communicated intent" to do violence to another.

The term "violence" also has a clear meaning: the use of physical force to cause harm. *See American Heritage Dictionary New College Edition* 1431 (defining "violence" as "[p]hysical force exerted for the purpose of violating, damaging, or abusing"); *Webster's Seventh New Collegiate Dictionary* 993 (defining "violence" as "exertion of physical force so as to injure or abuse"). In section 784.011(1), the "violence" is specifically limited "to the person of another," so for the purposes of the statute, "violence" means "the use of physical force to harm another's person." Section 784.011(1)

- 11 -

therefore prohibits an intentional expression of an intent to use physical force to harm another's person.

Given the plain language of section 784.011(1), the statute simply cannot be violated without the actor "direct[ing] his action at[] or target[ing] another individual." Whether or not section 784.011(1) requires "specific intent" under any particular understanding of that term, it certainly demands the intentional directing of action or "[s]pecific intent to direct action at another" to which *Somers* refers. This is especially true considering that the statute contemplates the existence of "such other person" who has developed a well-founded fear that such violence is imminent as a result of the threat. We therefore answer the rephrased first certified question in the affirmative.

Because we have answered the first certified question—albeit rephrased—in the affirmative, there is no need to address the second question directly, though we believe our answer to the first question essentially answers the second question anyway. Because section 784.011(1) does require that the intentional threat to do violence be directed at or targeted towards another individual, it is "aimed in that prescribed manner" referred to by the Supreme

Court in *Borden*, 141 S. Ct. at 1825, and therefore cannot be accomplished via a reckless act.  The fact that an assault cannot be committed by a reckless act under Florida law means that a violation of section 784.011(1) requires at least knowing conduct.

### III.  CONCLUSION

For the reasons explained, we answered the rephrased first certified question in the affirmative and conclude that the first element of Florida's assault statute, section 784.011(1), requires not just the general intent to volitionally take the action of threatening to do violence, but also that the actor direct the threat at a target, namely, another person.  We therefore return this case to the Eleventh Circuit Court of Appeals.

It is so ordered.

MUÑIZ, C.J., and POLSTON, LABARGA, COURIEL, GROSSHANS, and FRANCIS, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Certified Question of Law from the United States Court of Appeals for the Eleventh Circuit – Case No. 19-11484

Joe DeBelder, Interim Federal Public Defender, Tallahassee, Florida, and Megan Saillant, Assistant Federal Public Defender, Gainesville, Florida,

for Appellant

Jason R. Coody, United States Attorney, Tallahassee, Florida, Robert G. Davies, Appellate Chief, Assistant United States Attorney, Pensacola, Florida, and Jordane E. Learn, Assistant United States Attorney, Northern District, Tallahassee, Florida,

for Appellee

Ashley Moody, Attorney General, Henry C. Whitaker, Solicitor General, Jeffrey Paul DeSousa, Chief Deputy Solicitor General, and Rachel R. Siegel, Deputy Solicitor General, Tallahassee, Florida,

for Amicus Curiae State of Florida